**The UNITED STATES, Appellant,**

v.

**J. M. ALTIERI, a/c Antonio Roig Sucesores S. En C., Appellee.**

**Customs Appeal No. 5514.**

United States Court of Customs and Patent Appeals.

June 27, 1974.

**1166**

Irving Jaffe, Acting Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Wesley K. Caine, New York City, attorneys of record, for the United States.

Siegel, Mandell & Davidson, Joshua M. Davidson, Brian S. Goldstein, New York City, attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision and judgment of the United States Customs Court, Third Division, 68 Cust.Ct. 169, C.D. 4355 (1972), sustaining appellee's protest against the classification of certain copper tubes imported from Mexico to San Juan, Puerto Rico, under TSUS 613.02 as seamless copper tubes. The Customs Court held the merchandise classifiable under TSUS 666.20 as parts of machinery for use in the manufacture of sugar. We reverse.

The statutes involved are:

10. *General Interpretative Rules.* For the purposes of these schedules—

\* \* \* \* \* \*

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i. e., the use which exceeds all other uses (if any) combined;

(ii) a tariff classification controlled by the actual use to which an imported article is put in the United States is satisfied only if such use is intended at the time of importation, the article is so used, and proof thereof is furnished within 3 years after the date the article is entered;

\* \* \* \* \* \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

*Classified under:*

Schedule 6, TSUS—Metals and Metal Products

\* \* \* \* \* \*

Part 2. Metals, Their Alloys, and Their Basic Shapes and Forms

*Part 2 headnotes:*

1. This part covers precious metals and base metals \* \* \*, their alloys, and their so-called basic shapes and

forms, and, in addition, covers metal waste and scrap. \* \* \* This part does not include—

\* \* \* \* \* \*

(iv) other articles specially provided for elsewhere in the tariff schedules, or parts of articles.

\* \* \* \* \* \*

Subpart C.—Copper

*Subpart C headnotes*:

1. This subpart covers copper, its alloys, and their so-called basic shapes and forms, and in addition covers copper waste and scrap.

\* \* \* \* \* \* \*

Pipes and tubes and blanks therefor, pipe and tube fittings, all the foregoing of copper:

Pipes and tubes and blanks therefor:

Copper, other than alloys of copper:

Item
613.02 Seamless ....................... 5.2¢ per lb.

*Claim Sustained by Court Below*:

Schedule 6, TSUS—Metals and Metal Products

\* \* \* \* \* \* \*

Part 4. Machinery and Mechanical Equipment

*Part 4 headnotes*:

1. This part does not cover—

\* \* \* \* \* \* \*

(vi) articles and parts of articles specifically provided for elsewhere in the schedules.

\* \* \* \* \* \* \*

Subpart C. Agricultural and Horticultural Machinery; Machinery; Machinery for Preparing Food and Drink

\* \* \* \* \* \* \*

Industrial machinery for preparing and manufacturing food or drink, and parts thereof:

Item
666.20 Machinery for use in the manufacture of sugar, and parts thereof ...... Free

———◆———

The merchandise consists of approximately 8100 seamless copper tubes, six feet, 6½ inches long, 16 gauge, 1¾ inch outside diameter, with their ends annealed. The importer-appellee, Antonio Roig Sucesores, ordered the tubes for use in new evaporators it had purchased but which it had received in incomplete con-

dition, without the tubes. The evaporators were to replace old ones used in its sugar manufacturing plant. Each evaporator consisted of an enclosed vessel with a heat exchanger in the bottom. The heat exchangers were made up of copper tubes fixed between plates so that steam could flow around the tubes while juice extracted from the sugar cane flowed through them to be heated. The ends of the tubes were annealed to soften the copper so that the ends could be flanged in assembling the tubes with the plates.

The Customs Court ordered the parties to file supplemental briefs directed to the following question:

> Is the TSUS item 666.20 classification for "Machinery for use in the manufacture of sugar, and parts thereof" a classification controlled by rule of "chief use" or controlled by rule of "actual use" under [General Interpretative Rule] 10(e) *supra*?

On that matter the court concluded:

> The legislative history, cited *supra* [Tariff Classification Study, Submitting Report, Part II, pages 5, 14, Appendix A, page 50, November 15, 1960], and in the supplemental briefs, discussing the problems attending tariff classifications by "chief use" and "actual use", in our opinion, is too indefinite and uncertain to resolve that TSUS item 666.20 is an "actual use" provision as plaintiff contends. Since TSUS item 666.20 is in the same classifying language as paragraph 1604 of the Tariff Act of 1930, from which TSUS item 666.20 is derived, we are constrained to follow the established judicial construction that as classified in paragraph 1604, United States v. Union Sugar Div., Consolidated Foods Corp., 54 CCPA 1, C.A.D. 892 (1966), and TSUS item 666.20, S. Jackson & Son, McCandless, Inc. v. United States, 65 Cust.Ct. 327, C.D. 4097 (1970), "machinery for use in the manufacture of sugar" is a classification by "chief use."

The court then held that "the imported tubes which were designed and dedicated for sole use with machinery used in the manufacture of sugar are parts of said machinery and sustain[ed] the protest." It rejected appellant's contention that there was no evidence that the imported tubes were in a class of tubes which were solely or chiefly used in heat exchangers of evaporators chiefly used in the manufacture of sugar. The court justified its position that proof that the evaporators were of a class or kind chiefly used in the manufacture of sugar was unnecessary by stating:

> * * * the rule of chief use, when and if applicable, is a rule for classifying imported articles, and the imported articles in this case are tubes not evaporators.

It then stated that "it is fair to infer" upon the record that appellee's "evaporator is an integral component of its aggregate machinery, used in the manufacture of sugar."

### OPINION

The imported merchandise here is the seamless copper tubes and the classification in issue under TSUS 666.20 is that of the Customs Court as "parts" of "machinery for use in the manufacture of sugar," rather than as the "machinery" itself. General Interpretative Rule 10 (ij), supra, providing that a "solely" or "chiefly used" test is applicable in determining the status of "parts" is applicable to the tubes. However, the Customs Court apparently overlooked the fact that appellee must also prove that the "machinery" of which the tubes are parts is "machinery *for use in the manufacture of sugar*" (emphasis added). Thus, the evaporators with their heat exchangers containing the tubes are also subject to a use test.

As to the kind of use test applicable, we are satisfied that the court correctly concluded that "machinery for use in the manufacture of sugar in item 666.-20 is a classification by 'chief use'." The

court aptly characterized the legislative history advanced before it as "too indefinite and uncertain" to demonstrate that the "established judicial construction" supporting its conclusion was not to be followed in this case. Appellee here argues again that TSUS 666.20 is controlled by actual use, relying largely on a part of the legislative history considered by the lower court and certain other arguments pointing out that "machinery for the manufacture of sugar" was separated out from various other agricultural implements included with it in paragraph 1604 of the 1930 Act in adopting the present Tariff Schedules. Nothing persuasive of appellee's position is seen in the arguments advanced. Rather, it is significant that appellee has not cited any decisions to support the attack on the "established judicial construction" of "machinery for use in the manufacture of sugar" as a chief use provision.

Appellee's burden of proving the classification claimed in his protest thus requires demonstration that the elements of "chief use" of the "machines" or evaporators have been met. See General Interpretative Rule 10(e)(i), supra; also, L. Tobert Co. v. United States, 41 CCPA 161, C.A.D. 544 (1953) (use in the United States rather than mere local use) and United States v. The Baltimore & Ohio R. R. Co., 47 CCPA 1, C.A.D. 719 (1959) (use of the class or type of goods rather than a particular shipment). On this point, the court itself referred to "the record testimony that the evaporators with heat exchangers are also used in power plants and in distilleries, and that some distilleries use copper tubes in heat exchangers." In contrast to that testimony adverse to its position, appellee has offered no significant evidence that the evaporators using heat exchangers with the tubes therein were of a "class or kind" whose "use in the United States" for the manufacture of sugar "exceeds all other uses (if any) combined." Rule 10(e)(i). Appellee thus has failed to provide satisfactory evidence of compliance with the use test for the "machinery" part of TSUS 666.20. Likewise we find the evidence insufficient to comply with the sole or chief use test applicable under Rule 10(ij) for "parts" of such machinery. The most pertinent evidence is testimony of appellee's witness Arsuaga that "in Puerto Rico" the type of tube imported "is exclusively used in sugar mills." There is no evidence regarding use on a *national basis* of seamless tubes of the class or kind imported.

Appellee also relies on The Servco Co. v. United States, 68 Cust.Ct. 83, C.D. 4341 (1972), affirmed, United States v. Servco Co., 60 CCPA 137, C.A.D. 1098, 477 F.2d 579 (1973). That case dealt with Schedule 6, Part 2, Headnote 1(iv), which states that Part 2, which includes TSUS 613.02 in which the District Director classified the present tubes, does not include

> * * * other articles specially provided for elsewhere in the tariff schedules, *or parts* of articles. [Emphasis added.]

Since appellee is adjudged not to have met his burden of proving that the tubes are properly classified in TSUS 666.20, as claimed, the *Servco* case is not reached in determining that the judgment below must be reversed. However, appellee's aforementioned failure of proof also results in a failure to show that the importations are provided for elsewhere than in TSUS 613.02, as originally classified. It would not suffice for appellee to prove the tubes do not belong in TSUS 613.02. That is only half of his dual burden.

Accordingly, the judgment of the Customs Court is reversed.